IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CT-3082-FL

| RONALD McCLARY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| CLARENCE GODLEY, Kitchen Steward, | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 79) pursuant to Federal Rule of Civil Procedure 56. The motion was fully briefed and the issues raised are ripe for decision. For the reasons that follow, the court grants the motion.

### STATEMENT OF THE CASE

Plaintiff commenced this action by filing complaint on March 27, 2017, alleging defendant Clarence Godley ("Godley") violated his rights under the Eighth Amendment to the United States Constitution. Between April 2017 and November 2017, plaintiff filed seven motions to amend the complaint. On November 7, 2017, the court entered order directing plaintiff to file one amended complaint particularizing his claims. Plaintiff timely complied with the court's order by filing the operative amended complaint on November 21, 2017. On November 28, 2017, the court conducted its frivolity review of the operative amended complaint and allowed the matter to proceed.

On July 18, 2018, the court entered case management order governing discovery and pretrial dispositive motions practice, and also appointed North Carolina Prisoner Legal Services, Inc.

("NCPLS") to represent plaintiff for the discovery phase of the case. The parties completed discovery on or about December 26, 2018. On January 2, 2019, NCPLS moved to withdraw from representing plaintiff, noting its opinion that further appointment of counsel is not necessary in this action. The court granted NCPLS's motion to withdraw.

On February 27, 2019, defendant filed the instant motion for summary judgment. In support, defendant relies upon memorandum of law, statement of material facts, and the following: 1) excerpts from plaintiff's medical records; 2) declaration from defendant; 3) excerpts from Maury Correctional Institution's ("Maury C.I.") food services policy; 4) MNT-4 sample menu; 5) Maury C.I.'s tray line accuracy reports from April 2016 through May 2018; and 6) declarations from third-party witnesses Demetrius Hines ("Hines"), Vondella Pratt ("Pratt"), and Raija Ellis ("Ellis"). Plaintiff filed response opposing defendant's motion on March 6, 2019, which relies upon memorandum of law, statement of material facts, and excerpts from plaintiff's medical records. Plaintiff's filed amended response on March 8, 2019, which relies upon additional excerpts from his medical records.

**STATEMENT OF THE FACTS**

As defendant moves for summary judgment, the court recounts the facts in the light most favorable to plaintiff.

Defendant is the food services manager at the Maury C.I. (Godley Decl. (DE 81-3) ¶ 2). Plaintiff is an inmate in the custody of the North Carolina Department of Public Safety ("DPS"), who was housed at the Maury C.I. from April 2016 to May 2018. (Id. ¶ 3).

Defendant is responsible for managing all aspects of the Maury C.I.'s food services operation, including supervising food services staff, procuring food and other supplies, managing

inventory, and assuring compliance with sanitation and food safety standards. (Id. ¶ 5). Inmate meal trays are prepared by other inmates employed in the Maury C.I. kitchen under supervision of food services officers and supervisors. (Id. ¶ 10; Hines Decl. (DE 81-7) ¶ 3; Pratt Decl. (DE 81-8) ¶ 3; Ellis Decl. (DE 81-9) ¶ 3). Defendant is the head supervisor over all DPS employees and inmates employed in the kitchen and he does not ordinarily prepare inmate meal trays. (Godley Decl. (DE 81-3) ¶ 10).

Plaintiff has been prescribed the "MNT-4" therapeutic diet. (Id. ¶ 13). The MNT-4 diet provides for daily intake of 3,000 calories, and is low in fat and sodium, high in fiber, and provides carbohydrate content and calorie restrictions. (Id. ¶ 8; Maury C.I. Food Services Policy (DE 81-4) at 4). Registered dieticians write the MNT-4 menu, but defendant is responsible for ensuring that all inmates prescribed that diet receive meal trays containing items from the MNT-4 menu and appropriate portion sizes. (Godley Decl. (DE 81-3) ¶¶ 6-7; Maury C.I. Food Services Policy (DE 81-4) at 1).[1]

When plaintiff arrived at the Maury C.I., he notified defendant that he did not believe his meal trays complied with the MNT-4 diet and menu requirements. (Godley Decl. (DE 81-3) ¶ 13). Plaintiff's medical records indicate that his weight dropped to 163 pounds after one year of incarceration at the Maury C.I., which is approximately 10% below his ideal body weigh. (See, e.g., Medical Records (DE 81-2) at 1). Plaintiff's medical records, however, also reflect that his weight fluctuated during the relevant time period. (See id. at 1-9). At times, plaintiff weighed 178 pounds, which is within 98% of his ideal body weight. (See id.).

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

3

Defendant submitted uncontradicted evidence that plaintiff's MNT-4 meal trays were "regularly" double or triple checked by either defendant himself or a DPS food services supervisor/officer to ensure the trays were compliant with the MNT-4 diet. (Godley Decl. (DE 81-3) ¶ 14; Hines Decl. (DE 81-7) ¶ 8; Pratt Decl. (DE 81-8) ¶ 8; Ellis Decl. (DE 81-9) ¶ 8). The undisputed record evidence also reflects that defendant instructed DPS food services employees to confirm plaintiff's MNT-4 trays were accurate. (Hines Decl. (DE 81-7) ¶ 8; Pratt Decl. (DE 81-8) ¶ 8; Ellis Decl. (DE 81-9) ¶ 8). Finally, defendant submitted monthly tray line accuracy reports for the period April 2016 to May 2018, which showed food services staff prepared the MNT-4 trays at approximately 100% accuracy. (Godley Decl. (DE 81-3) ¶¶ 11-12; Tray Line Accuracy Reports (DE 81-6) at 1-126).[2]

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

---

[2] Plaintiff argues the tray line accuracy reports are unreliable or fabricated and that defendant did not review his tray for compliance with the MNT-4 diet. As discussed further below, however, plaintiff did not support these contentions with verified evidence.

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

The Eighth Amendment "protects inmates from inhumane treatment and conditions while

5

imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "subjectively the officials acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ."

6

Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016).

Here, plaintiff alleges defendant failed to provide complete MNT-4 meal trays, which caused substantial weight loss. Defendant does not dispute that plaintiff's health conditions and resulting need for MNT-4 diet satisfy the objective prong of the Eighth Amendment standard, or that he was aware of plaintiff's need for an MNT-4 diet. Defendant argues plaintiff has failed to establish he knew of <u>and</u> disregarded plaintiff's condition. The court agrees.

The undisputed record evidence establishes defendant and DPS food services staff carefully monitored plaintiff's food trays and conducted monthly accuracy checks to ensure the MNT-4 trays were correctly prepared. (Godley Decl. (DE 81-3) ¶¶ 11-12, 14; Hines Decl. (DE 81-7) ¶ 8; Pratt Decl. (DE 81-8) ¶ 8; Ellis Decl. (DE 81-9) ¶ 8; Tray Line Accuracy Reports (DE 81-6) at 1-126). Plaintiff has presented no competent summary judgment evidence suggesting otherwise.[3] Plaintiff relies on his medical records showing weight loss, but those same medical records establish his weight fluctuated while he was incarcerated at the Maury C.I., and at times it was within two pounds of his ideal body weight. (See Medical Records (DE 81-2) at 1-9). In any event, plaintiff's weight loss standing alone does not establish defendant disregarded plaintiff's medical condition. Where plaintiff has failed to establish a triable issue of fact as to whether defendant knew of and disregarded his medical needs, defendant's motion for summary judgment must be granted. See Shakka, 71 F.3d at 166-67; Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986) (defendant entitled to summary judgment on deliberate indifference claim where undisputed record evidence

---

[3] Plaintiff's unsworn response briefs and other miscellaneous filings assert in conclusory fashion that defendant failed to ensure the MNT-4 diet was properly prepared. Plaintiff, however, may not rely on these allegations to defeat a properly-supported motion for summary judgment. See Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (party opposing summary judgment must submit "verified evidence" to establish triable issue of fact).

showed prison staff carefully responded to plaintiff's complaints).

Plaintiff's claims for damages against defendant in his official capacity also must be dismissed. Official capacity claims are, in effect, claims against the governmental entity employing the defendant. See Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006). Defendant is employed by the State of North Carolina, which is immune from plaintiff's suit under the Eleventh Amendment. See Eldelman v. Jordan, 415 U.S. 651, 662-63 (1974).

Finally, in his second response, plaintiff requests leave to amend his complaint to include a claim for retaliation. Plaintiff requires leave of court to amend his complaint. See Fed. R. Civ. P. 15(a)(2). Leave to amend must be freely given when justice so requires, and will be denied only when amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. See Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). With respect to futility, the court may deny leave to amend "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

To state a claim for retaliation, plaintiff must allege he engaged in protected First Amendment activity, the defendant's actions adversely affected his First Amendment rights, and that a causal relationship exists between the protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017). Plaintiff's conclusory allegations that unidentified prison staff retaliated against him are not sufficient to state a claim for retaliation. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Accordingly, plaintiff's proposed amendments are futile.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment (DE

79), DENIES plaintiff's motion to amend (DE 86), and DIRECTS the clerk to close this case.

SO ORDERED, this the 10th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge